**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **G.H.**

**No. 23-736** (Monongalia County 22-JA-7)

## MEMORANDUM DECISION

Petitioners D.S. and C.S.,[1] intervenors below and G.H.'s maternal grandparents, appeal the Circuit Court of Monongalia County's November 22, 2023, order denying their request for adoptive placement.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In January 2022, the DHS filed a petition alleging that the child's mother and unknown father[3] abused and neglected the child after the mother admitted to DHS workers that she used methamphetamine, heroin, and Subutex while pregnant, among other allegations. The petition further alleged that the mother had another child, B.H., to whom her parental rights had previously been terminated. The petitioners adopted B.H. following a separate proceeding. At the preliminary hearing, the circuit court heard proffer of counsel regarding the DHS's obligation to conduct a home study on the petitioners; however, the court ordered that the DHS not pursue a home study at that time due to concerns raised by the DHS regarding the petitioners' conduct with other children in their care. Considering testimony of a DHS worker concerning its investigation, the court found it proper for G.H. to remain in DHS custody and the child was placed in a foster home, where she remained throughout the proceedings.

---

[1] The petitioners appear by counsel Edmund J. Rollo. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Andrew T. Waight. Counsel Kristin D. Antolini appears as the child's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] An alleged father of the child was initially named in the DHS's petition; however, DNA test results confirmed that he was not the child's father, and the petition was amended in March 2022 to include allegations that an unknown father abandoned the child.

1

The mother and unknown father were adjudicated as abusing and neglecting parents at a hearing held in May 2022, and their parental rights were later terminated at a hearing held in August 2022. In the interim, the petitioners filed a motion to intervene for purposes of placement in April 2022. The petitioners appeared at the August 2022 dispositional hearing, and counsel addressed the court regarding the motion. The DHS and guardian reiterated concerns with the petitioners' fitness for placement, and the court deferred ruling until an evidentiary hearing could be held.

At a hearing in October 2022, the DHS and guardian agreed to the petitioners' intervenor status and the circuit court granted the petitioners' motion to intervene; however, the DHS and guardian contested the petitioners' request for placement. The court then permitted testimony related to placement. A DHS worker testified regarding the aforementioned concerns with the petitioners' ability to properly care for the child, which derived from the placement of the other children in their home. Specifically, the DHS previously removed a child from the petitioners' care after the petitioners failed to communicate with the DHS and adhere to recommendations involving proper supervision of that child. Regarding the mother's older child, B.H., whom the petitioners previously adopted, the DHS worker testified that despite the petitioners' knowledge of the mother's conduct, the petitioners permitted her to have contact with B.H. At the conclusion of the testimony, the court ordered the DHS to assess the petitioners' home for potential placement and ordered that the petitioners participate in therapy services and complete a psychological evaluation. The court later permitted visitation between the petitioners and the child at a review hearing held in January 2023.

Following several review hearings, the circuit court held a final hearing on the petitioners' request for placement in August 2023. The court heard testimony from a DHS worker, who again stressed that the petitioners allowed the mother to have contact with her older child, B.H. When the intervenors testified, they admitted permitting this contact but maintained their desire to have custody of G.H. because "she is family." A National Youth Advocate Program worker testified regarding the child's significant medical needs and the bond shared between the child and her foster family, stating that the child is "attached to her foster home." Based on the evidence presented, the court found that it would be in the child's best interests to remain in the foster home, as she "has been with the foster parents for twenty months . . . since her discharge from the hospital" and "after her traumatic beginning . . . it is the only home that the child has known . . . it is clear that [they] have developed a bond that this child needed and continues to need." While the court did "not doubt the love that the [petitioners] have for their family," recognizing that the petitioners are the child's grandparents and have adopted the child's half-sibling, B.H., the court pointed out that the petitioners permitted B.H. to have contact with the mother despite her parental rights being terminated. Further, because B.H. had a relationship with the mother, but G.H. was not permitted contact, the court recognized that there could be adverse issues between the siblings should the court place G.H. in the same home. Finally, the court considered that the guardian and DHS presented evidence in an effort to demonstrate that the petitioners were not appropriate caregivers; however, the court did "not find this evidence to be exceptionally persuasive." Rather, the court's analysis turned on its finding that the child "is thriving with the [foster family] with whom she has spent nearly 100% of her life, and that removal of [G.H.] from the [foster family] and placement with the [petitioners] under the current circumstances would not be in her best

interest." While the court encouraged the parties to "accommodate an ongoing relationship between [G.H.] and her grandparents," the court ultimately denied the petitioners' request for adoptive placement. It is from this order that the petitioners appeal.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Furthermore, "[q]uestions relating to . . . custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl. Pt. 2, *In re P.F.*, 243 W. Va. 569, 848 S.E.2d 826 (2020) (quoting Syl., in part, *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977)).

Before this Court, the petitioners argue that the circuit court erred by denying their request for adoptive placement, asserting that it was in the child's best interests to be placed with her grandparents. Indeed, West Virginia Code § 49-4-114(a)(3) "provides for grandparent preference in determining adoptive placement" and "[t]he statute contemplates that placement with grandparents is presumptively in the best interests of the child." *In re P.F.*, 243 W. Va. at 570, 848 S.E.2d at 827, Syl. Pt. 7, in part (quoting Syl. Pt. 4, *Napolean S. v. Walker*, 217 W. Va. 254, 617 S.E.2d 801 (2005)). However, "[t]he preference is just that—a preference. It is not absolute." *In re K.E.*, 240 W. Va. 220, 225, 809 S.E.2d 531, 536 (2018). Here, the circuit court properly found that placement with the petitioners was not in the child's best interests, even considering that the petitioners are her grandparents. While the petitioners assert error in the court's findings because they complied with the court's orders and "jumped through hoops" to show their fitness, we disagree, as the court may take appropriate measures to assure that the petitioners would be suitable adoptive parents. *See, e.g.*, *In re L.M.*, 235 W. Va. 436, 774 S.E.2d 517 (2015).

In any event, the circuit court's decision did not rest entirely on the petitioners' suitability; rather, it hinged on the child's significant bond to her foster family, given that she lived with them since her discharge from the hospital—approximately twenty months—and became "attached." *See* W. Va. Code § 49-4-111(b) (providing that, "[w]hen a child has been placed in a foster care arrangement for a period in excess of eighteen consecutive months," that arrangement may not be terminated unless it is in the child's best interests, among other requirements). Furthermore, the court considered the statutory preference for placing siblings together in the same home but found that, because of the mother's involvement in the child's half-sibling's life, it would not be in the child's best interests to be united under the circumstances. *See* W. Va. Code § 49-4-111; *see also In re R.S.*, 244 W. Va. 564, 572-74, 855 S.E.2d 355, 363-65 (2021) (determining that sibling preferences are "always tempered by a consideration of the children's best interests" (quoting *In re K.L.*, 241 W. Va. 564, 557, 826 S.E.2d 671, 682 (2019))). We, therefore, refuse to disturb the court's finding that it was in the child's best interests to remain in the care of her foster family and see no abuse of discretion.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 22, 2023, order is hereby affirmed.

Affirmed.

3

**ISSUED**: November 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn